THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLAIRCOM DE MEXICO, S.A. DE C.V., a Mexican corporation, CONTROTITULOS, S.A. DE C.V., a Mexican corporation, and GLOBALCOM, S.A. DE C.V., a Mexican corporation,

Plaintiff,

v.

AT&T WIRELESS SERVICES, INC. (n/k/a NEW CINGULAR WIRELESS SERVICES, INC.),

Defendant.

No. 2:05-CV-01045-JCC

**DECLARATION OF BENITO OHARA IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

28 U.S.C. § 1746

Benito Ohara declares and says:

1. I am the Chief Executive Officer for both Claircom de Mexico, S.A. DE C.V. ("CDM"), and Globalcom, S.A. de C.V. ("Globalcom"), and the authorized representative for Controtitulos, S.A. de C.V ("Controtitulos"). I am over the age of eighteen, and I am competent to declare the statements contained herein based upon my own personal knowledge.

2. CDM is a corporation formed under the laws of Mexico, having its principal place of business in Mexico City, Mexico. Controtitulos is a corporation formed under the laws of Mexico, having its principal place of business in Celaya, Mexico. Controtitulos is one of the Mexican Shareholders of CDM, as defined by the contract at issue in this case.

**DECLARATION OF BENITO OHARA IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT - 1**
Case No. 2:05-CV-01045-JCC
119990.0001/1287372.1

LANE POWELL PC
1420 5TH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
(206) 223-7000

Globalcom is a corporation formed under the laws of Mexico, having its principal place of business in Mexico City, Mexico. Globalcom is one of the Mexican Shareholders of CDM, as defined by the contract at issue in this case.

3. On October 8, 1992, CDM was organized by CCG and a predecessor of Controtitulos under the laws of Mexico for the purpose of operating the Mexican segment of an integrated North American network (the "North American Network") that would provide air-to-ground telecommunications services for airline passengers through a system operated directly by CCG. Globalcom later became an additional shareholder of CDM.

4. On October 7, 1993, CDM obtained a license from the Mexican Ministry of Communications and Transport (the *Secretaria de Communicaciones y Transportes* or "SCT") — commonly referred to as an "SCT License" — which authorized CDM to operate the Mexican segment of the North American Network. Along with CDM's Mexican segment and CCG's United States segment, a Canadian segment — involving a separate Canadian company — allowed CCG to offer air-to-ground telecommunications services to passengers on domestic and international flights all over North America. The SCT License provides for the installation of 26 ground stations in Mexico within the term of two years. It also provides that the operation of the Mexican segment should be made in Mexico. The foregoing was an obligation acknowledged by CCG in the parties' Joint Venture Operating Agreement, dated July 14, 1995, and which CCG intentionally violated. Attached hereto as Exhibit A is a true and correct copy of an English translation of the SCT License produced in discovery.

5. CCG, CDM, Controtitulos, and Globalcom, entered into an agreement, entitled, "Joint Venture Operation Agreement," dated as of July 14, 1995, to govern the operation of the Mexican segment of the North American Network (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit B.

6. Initially, after July 14, 1995, CCG administered and operated the network. At some point after July 14, 1995, and without any advance notice to me, AT&T Wireless

DECLARATION OF BENITO OHARA IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

Case No. 2:05-CV-01045-JCC
119990.0001/1287372.1

LANE POWELL PC
1420 5TH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
(206) 223-7000

Services, Inc. ("AWS") acquired CCG. CCG, followed by AWS, administered and operated the network from approximately 1995 through approximately the Fall of 2002, when it claims that it decommissioned the North American Network.

7. Pursuant to Section 5(b) of the Agreement, CDM agreed to pay to the Mexican Shareholders of CDM [Controtitulos and Globalcom], a quarterly fee, referred to as the "Network Contribution Fee" ("NCF") based upon the gross revenues of the joint venture. Pursuant to Section 5(e) of the Agreement, CCG and AWS "unconditionally and irrevocably guarantee[d] the payment in full when due of all" NCF payments due from CDM under Section 5(b). The Agreement refers to the obligation to make such payments as "Guaranteed Obligations." According to the Agreement, such obligations are "absolute, unconditional and irrevocable for the full amount of the Guaranteed Obligations, as if [CCG] were the main obligor and not a guarantor . . ." Section 5(e)(i) of the Agreement provides for recovery of costs and expenses, including attorney's fees and expenses, incurred in "enforcing or seeking to enforce this guarantee."

8. In accordance with the terms of the Agreement, CCG and AWS made certain quarterly NCF payments to the Mexican Shareholders of CDM; however, CCG and/or AWS calculated NCF allocations payable to the Mexican Shareholders of CDM for the quarter ending September 2002, but failed to make this payment. Attached hereto as Exhibit C is a true and correct copy of a document prepared by CCG entitled, **"Claircom de Mexico Calculation of Network Contribution Fee, SCT License For the Quarter Ending September 2002."** In part, this document states, **"NOTE: THESE AMOUNTS WERE NOT SENT TO THE MEXICAN PARTNERS."** The last Network Contribution Fee payment the Mexican Shareholders received was for the fiscal quarter ending July 2002.

9. In accordance with Section 9 of the Agreement, CCG promised to pay CDM "50% of the Cross-Border Revenues collected by [CCG] within thirty (30) days after the end of each fiscal quarter of [CCG] during which [CCG] shall have collected such Revenues."

DECLARATION OF BENITO OHARA IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

Case No. 2:05-CV-01045-JCC
119990.0001/1287372.1

LANE POWELL PC
1420 5TH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
(206) 223-7000

CDM never received any Cross-Border Revenues ("CBR") from AWS/CCG. I learned during discovery in this case that AWS/CCG actually calculated CBR amounts payable to CDM, but chose never to make such payments.

10. After the June 2002 NCF payment, AWS/CCG stopped making any payments to CDM, Controtitulos, and/or Globalcom in accordance with the Agreement. Additionally, AWS/CCG ceased all communications with us and failed to provide financial reports required by the Agreement. Thereafter, we attempted to communicate repeatedly with AWS/CCG concerning the status of its payments and the venture's operations. It became impossible to contact anybody from AWS/CCG since calls were never returned or people denied the knowledge of our relationship and also the people with whom we previously communicated and were in charge of the business were either fired or ended their relationship with AWS/CCG. We were never informed that AWS/CCG had decided to decommission the North American Network or the venture's operations, and we were certainly never informed that the decision had been made to end operations. We were never informed that the decision had been mad to wind up or, as indicated in documents obtained in discovery, "wind down" operations.

11. By ignoring our requests for financial information and information concerning the venture's operations, AWS/CCG forced us to hire a lawyer in the United States to demand such information. Only after we hired a lawyer and filed suit did AWS/CCG reveal that it had withheld payments required under the Agreement.

12. AWS/CCG agreed in Section 11(d) of the Agreement – entitled "STRICT COMPLIANCE BY CLAIRCOM WITH THE SCT LICENSE; INDEMNIFICATION" – that it would "give prompt notice to the Mexican Shareholders of any decision by [AWS/CCG] to halt or reduce its furnishing of services to CDM under the Services Agreement or any other event or development . . . which shall or may cause the SCT License to be terminated." A true and correct copy of the referenced Services Agreement is attached hereto as Exhibit D. I

DECLARATION OF BENITO OHARA IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

Case No. 2:05-CV-01045-JCC
119990.0001/1287372.1

LANE POWELL PC
1420 5TH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
(206) 223-7000

have learned for the first time through discovery in this case that AWS/CCG had decided by May 2002 at the latest to phase out and decommission CDM's operations of the North American Network, including the Mexican Segment of the network. This decision has jeopardized the SCT license, and will likely cause CDM to be fined and actually lose the license. AWS/CCG never notified me or any representative of CDM, Controtitulos, or Globalcom that it had made this decision. Indeed, documents produced by AWS/CCG in discovery in this case show that it did not inform us of this decision as part of a plan to reduce or eliminate the liquidated damages or "termination fees" it was required to pay the Mexican Shareholders – Controtitulos and Globalcom. Attached hereto as Exhibit E is a true and correct copy of a May 9, 2002 email from Alan Goree, the former Director of Business Management of CCG, to Julie Taylor, in which he states this plan in response to Ms. Taylor's statement that "it would cost us $1M to terminate the arrangement is (sic) 2002." Attached hereto as Exhibit F is a true and correct copy of an email from Chris Nelson to Alan Goree, dated February 13, 2003, and entitled "close action items," in which Mr. Nelson stated his plan with regard to Mexico to, "Do nothing unless contacted."

13. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17TH day of April, 2006 at Mexico City, Mexico.

_____
Benito Ohara

DECLARATION OF BENITO OHARA IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 5
Case No. 2:05-CV-01045-JCC
119990.0001/1287372.1

LANE POWELL PC
1420 5TH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
(206) 223-7000

# CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2006, I caused the foregoing **Declaration of Benito Ohara in Support of Motion for Partial Summary Judgment** to be:

☒ electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Scott A.W. Johnson
scott.johnson@stokeslaw.com

Karolyn Ann Hicks
kah@stokeslaw.com

☐ mailed by first class United States mail, postage prepaid, to the following non-CM/ECF participants:

☐ hand delivered to the following non-CM/ECF participants:

☐ e-mailed and mailed by first class United States mail, postage prepaid, to the following non-CM/ECF participants:

☐ faxed and mailed by first class United States mail, postage prepaid, to the following non-CM/ECF participants:

/s/Leah Burrus
Leah Burrus

**DECLARATION OF BENITO OHARA IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** - 6

Case No. 2:05-CV-01045-JCC
119990.0001/1287749.1

**LANE POWELL PC**
1420 5TH AVENUE, SUITE 4100
SEATTLE, WASHINGTON 98101-2338
(206) 223-7000